UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MICHELE L. WILLINGHAM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | Cause No. 1:14-cv-281 |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Michele L. Willingham, on September 16, 2014. For the following reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Michele L. Willingham, filed an application for Supplemental Security Income on February 28, 2011, alleging a disability onset date of February 28, 2011. (Tr. 20). The Disability Determination Bureau denied Willingham's claim on May 17, 2011, and again upon reconsideration on July 26, 2011. (Tr. 20). Willingham subsequently filed a timely request for a hearing on September 21, 2011. (Tr. 20). A hearing was held on April 10, 2013, before Administrative Law Judge (ALJ) Patricia Melvin, and the ALJ issued an unfavorable decision on May 6, 2013. (Tr. 20–30). Vocational Expert (VE) Sharon D. Ringenberg testified at the hearing. (Tr. 20). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–3).

At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Willingham had not engaged in substantial gainful activity since

February 28, 2011, her alleged onset date. (Tr. 22). At step two, the ALJ determined that Willingham had the following severe impairments: bipolar disorder and dependent personality disorder. (Tr. 22). Also at step two, the ALJ stated that Willingham had the non-severe mental impairment of polysubstance abuse. (Tr. 22). At step three, the ALJ concluded that Willingham did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 22).

In determining whether Willingham had an impairment or combination of impairments that met the severity of one of the listed impairments, the ALJ considered Listing 12.04, 12.08, and 12.09. (Tr. 22–23). In finding that she did not meet the above listings, the ALJ considered the Paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 22). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated, extended episodes of decompensation as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 22–23). The ALJ found that Willingham had moderate difficulties in concentration, persistence, or pace. (Tr. 23). The ALJ indicated that Willingham had a GAF score of 57, and the State Agency psychological consultants' opinions supported this conclusion. (Tr. 23). The ALJ concluded that Willingham did not satisfy the Paragraph B criteria. (Tr. 23).

The ALJ then assessed Willingham's residual functional capacity (RFC) as follows:

> the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple instructions, defined as one to two step instructions; she is able to make judgments commensurate with unskilled work; she

2

> is able to respond appropriately to brief supervision and interaction
> with fellow workers and work situations; she is able to deal with
> changes i[n] a routine work setting; and she is capable of unskilled
> work (specific vocational preparation 1 and 2).

(Tr. 24). The ALJ explained that in considering Willingham's symptoms she followed a two-step process. (Tr. 24). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical and laboratory diagnostic technique that reasonably could be expected to produce Willingham's pain or other symptoms. (Tr. 24). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Willingham's functioning. (Tr. 24).

Willingham testified that she had experienced anxiety since childhood. (Tr. 24). She began receiving treatment for anxiety in 2007 and consistently took medication that lessened her anxiety since that time. (Tr. 24–25). Willingham also alleged that she was depressed, paranoid, slept excessively, and avoided associating with others. (Tr. 25). She noted that her medications helped her mental symptoms but that she had panic attacks a couple times a month. (Tr. 25). Additionally, Willingham indicated that she had bipolar disorder, which caused her to be rude and mean to her family. (Tr. 25). She had some problems with reading and writing but could count change and do simple math. (Tr. 25).

Willingham had five children, ranging from sixteen to three, who she gave up for adoption recently. (Tr. 25). She indicated that her parents helped her care for her kids. (Tr. 25). Willingham could care for her personal hygiene, did some chores around the house, and socialized with her family and children. (Tr. 25). Willingham stated that she watched television all day, microwaved frozen meals, and went shopping twice a week with her boyfriend. (Tr. 26). Willingham's mother and one of her friends prepared function reports noting their observations

of Willingham's restrictions. (Tr. 26). However, the ALJ gave those reports little weight. (Tr. 26).

The ALJ found that Willingham's impairments could cause her alleged symptoms but that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 26). The ALJ stated that the record supported her RFC assessment but did not support the severity of Willingham's allegations. (Tr. 26). After the alleged onset date, Willingham received mental health treatment and took Pristiq, Abilify, and Hydroxyzine. (Tr. 26). The ALJ noted that Park Center medical records found that Willingham had bipolar disorder, polysubstance dependence, dependent personality disorder, and a GAF of 57, which indicated moderate symptoms and moderate difficulty in social, occupational, and school functioning. (Tr. 26).

The ALJ noted that moderate difficulty in social and occupational functioning suggested that Willingham could work with some limitations. (Tr. 26). Dr. Larry Lambertson confirmed that assessment. (Tr. 27). The ALJ assigned great weight to Dr. Lambertson's opinion because he was one of Willingham's treating physicians, he was aware of her mental functioning, and he was qualified to make that assessment. (Tr. 27).

The Department of Welfare referred Willingham to Park Center while she was in a rehabilitation facility. (Tr. 27). The ALJ noted that Willingham's children were removed from her home due to drug abuse. (Tr. 27). She described Willingham's mental symptoms as mood swings, depression, and panic attacks and indicated that Willingham's medication improved her symptoms. (Tr. 27). She noted that Willingham completed general household chores, watched television, and was estranged from most of her family and friends. (Tr. 27). The ALJ gave little

4

weight to the suggestion that Willingham would have difficulty with gainful employment because it was inconsistent with her GAF score of 57. (Tr. 27).

On May 16, 2011, a State Agency psychological consultant found that Willingham had a mild restriction in daily living activities, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, and pace, and no episodes of extended decompensation. (Tr. 27). The consultant also concluded that Willingham could understand, remember, and follow simple instructions, make judgments commensurate with unskilled work, respond appropriately to brief supervision and interactions with coworkers, and handle changes to a routine work setting. (Tr. 27). The consultant stated that Willingham would prefer work with minimal social interaction and a supportive supervisor. (Tr. 27). Based on the above findings, the consultant concluded that Willingham could perform unskilled work. (Tr. 27). A second State Agency psychological consultant confirmed the above findings on July 26, 2011. (Tr. 27). The ALJ gave the State Agency psychological consultants' opinions great weight because they were consistent with Willingham's GAF score and her report that her medication improved her impairments. (Tr. 27).

On May 16, 2011, Willingham went to Park Center, where she reported no problems and that her medications were good. (Tr. 28). Park Center made the following assessments: no self-harm thoughts or behavior; no sleeping, appetite, or substance abuse problems; an euthymic mood; normal thought content and perception; no suicidal or homicidal ideation; appropriate judgment, appearance, and behavior; a cooperative and pleasant attitude; coherent thoughts; congruent affect; and medication compliance. (Tr. 28). The center also concluded that she was stable and maintaining well. (Tr. 28). The ALJ found the center's assessment inconsistent with total mental disability. (Tr. 28).

5

Willingham's nurse, Karen Lothamer, indicated that Willingham was assessed with bipolar disorder, polysubstance dependence, generalized anxiety disorder, dependent personality disorder, and a GAF score of 57. (Tr. 28). The ALJ gave her opinion great weight because it was consistent with Dr. Lambertson's opinion and the record, which suggested improved symptoms with medication. (Tr. 28). On November 15, 2011, Willingham went to Park Center for a second appointment and received a similar assessment. (Tr. 28). The ALJ indicated that the record demonstrated that Willingham was "well and stable" throughout 2012 and that her medication improved her anxiety and restlessness. (Tr. 28). On September 26, 2012, a mental health provider assessed Willingham with a GAF score of 51, which indicated moderate symptoms and moderate functioning difficulty. (Tr. 28).

On March 23, 2013, Willingham told her treating nurse that she was taking Xanax three times a day because of stress. (Tr. 28). Willingham denied having chest pain, dizziness, shortness of breath, or suicidal thoughts. (Tr. 29). The nurse found that her symptoms were moderate and occurred occasionally. (Tr. 29). The ALJ concluded that the medical evidence did not support Willingham's allegations of disabling symptoms. (Tr. 29). She also found that the record supported her RFC assessment because Willingham improved with medication, received conservative treatment, had moderate symptoms and limitations, and the State Agency medical consultants had similar findings. (Tr. 29).

At step four, the ALJ found that Willingham had no past relevant work. (Tr. 29). Considering Willingham's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that Willingham could perform, including dishwasher (3,000 jobs in Indiana and 200,000 jobs nationally), hand packager (1,200 jobs in Indiana and

40,000 jobs nationally), and hand presser (3,000 jobs in Indiana and 150,000 jobs nationally). (Tr. 29–30).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); ***Pepper v. Colvin***, 712 F.3d 351, 361–62 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098; ***Pepper***, 712 F.3d at 361–62; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***, 384 F.3d 363, 368–69 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other

work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f)**.

Willingham has argued that the ALJ failed to incorporate her concentration, persistence, or pace limitation into the VE hypothetical.  The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record.  *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record.").  That includes any deficiencies the claimant has in concentration, persistence, or pace.  *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating that the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases).  The most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical.  *O'Connor-Spinner*, 627 F.3d at 619.

However, ALJs do not need to explicitly state "concentration, persistence, or pace" in the hypothetical for all cases.  *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619.  Rather, a court may assume a VE's familiarity with a claimant's limitations, despite deficiencies in the hypothetical, when the VE independently reviewed the medical record or heard testimony directly addressing those limitations.  *O'Connor-Spinner*, 627 F.3d at 619; *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).  This exception does not apply if the ALJ poses a series of increasingly restrictive hypotheticals because courts infer that the VE's attention is focused on

9

the hypotheticals and not the record. *O'Connor-Spinner*, 627 F.3d at 619; *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). Here, the VE reviewed the medical record independently and heard testimony regarding Willingham's limitations. (Tr. 78). However, the ALJ asked the VE increasingly restrictive hypotheticals. (Tr. 79). Therefore, this exception does not apply.

An ALJ's hypothetical may omit "concentration, persistence, or pace" when it is clear that the ALJ's phrasing specifically excluded tasks that someone with the claimant's limitations could not perform. *O'Connor-Spinner*, 627 F.3d at 619. For example, courts have upheld hypotheticals that restricted a claimant to low-stress work when the limitations were stress or panic related. *See Johansen v. Barnhart*, 314 F.3d 283, 285, 288–89 (7th Cir. 2002) (upholding a hypothetical formulated in terms of "repetitive, low-stress" work because the description eliminated positions likely to trigger symptoms of the panic disorder that originated the claimant's moderate limitations in concentration, persistence, or pace); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007) (upholding a hypothetical that restricted the claimant to low-stress, low-production work when stress-induced headaches, frustration, and anger caused the claimant's difficulties in concentration, persistence, or pace). This exception does not apply because Willingham's limitations are not primarily stress or panic related.

Courts may uphold a hypothetical that does not mention "concentration, persistence, or pace" when the underlying conditions were mentioned and the link between the underlying condition and the concentration difficulties was apparent enough to incorporate those difficulties by reference. *See Simila*, 573 F.3d at 521–22 (upholding the hypothetical but indicating the failure to include the specific limitations was "troubling"). Generally, terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. *Stewart*, 561 F.3d at 684–85

(finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see* **Kasarsky v. Barnhart**, 335 F.3d 539, 544 (7th Cir. 2003) (posing hypothetical as individual of borderline intelligence did not account for limitations of concentration). Here, the ALJ listed Willingham's underlying conditions, but there was no link between the underlying conditions and Willingham's concentration difficulties to incorporate her difficulties by reference. Therefore, this exception does not apply.

The Commissioner has argued that the ALJ relied on Dr. Kennedy's RFC assessment to formulate her VE hypothetical. Dr. Kennedy's narrative RFC assessment indicated that Willingham could understand, follow, and remember simple instructions, make judgments commensurate with unskilled work, respond appropriately to coworker interactions and brief supervision, and handle changes in a routine work setting. (Tr. 436). The ALJ's VE hypothetical included those same limitations. (Tr. 79). The Commissioner has argued that Dr. Kennedy's narrative assessment adequately translated Willingham's limitations into a mental RFC that the ALJ could adopt reasonably. *See* **Varga v. Colvin**, 794 F.3d 809, 816 (7th Cir. 2015) (citing *Yurt*, 758 F.3d at 858).

Dr. Kennedy's narrative RFC assessment did not include each moderate limitation she found. She found that Willingham was moderately limited in maintaining attention and concentration for extended periods, carrying out detailed instructions, and completing a normal workday and workweek without interruptions or an unreasonable number of rest periods. (Tr. 434–35). Although the Commissioner has argued that Dr. Kennedy's narrative assessment adequately translated Willingham's limitations, the narrative's limitation to unskilled work did not account for Willingham's ability to sustain work throughout a workday or workweek. *See Yurt*, 758 F.3d at 858–59 (noting that a limitation to unskilled work does not capture limitations

11

in concentration, persistence, and pace adequately). Because the ALJ's hypothetical failed to account for Willingham's limitations in concentration, persistence, and pace, she has not built an accurate and logical bridge from the evidence of mental impairments to the hypothetical and mental RFC. Therefore, this matter is **REMANDED** for further proceedings. The ALJ should include Willingham's limitations in concentration, persistence, and pace in the VE hypothetical on remand.

Willingham also has argued that the ALJ did not support her RFC with substantial evidence. SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not

12

need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.") (citations omitted). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

Willingham has presented four challenges to the ALJ's RFC assessment. First, she has argued that Dr. Lambertson's opinion did not support the RFC assessment but contradicted the ALJ's finding. She noted that Dr. Lambertson found that Willingham would have difficulty maintaining employment because of her anxiety and depression. (Tr. 418). He concluded that she would work for a limited time period and then leave due to increased anxiety or depression. (Tr. 418). Therefore, she has argued that the ALJ erred by relying on Dr. Lambertson's opinion to support her RFC assessment.

The ALJ confronted the portion of Dr. Lambertson's opinion that contradicted her assessment and explained why she rejected it. (Tr. 27) (citing Exhibit B4F, pg. 7). The ALJ gave that portion of Dr. Lambertson's opinion little weight because it was inconsistent with Willingham's GAF score and her positive response to therapy and medication. (Tr. 27). However, the ALJ gave great weight to a separate portion of Dr. Lambertson's opinion. (Tr. 27). Specifically, she gave great weight to his conclusion that Willingham responded well to therapy and medication. (Tr. 27) (citing Exhibit B4F, pg. 8). Because this matter is being remanded on a separate issue, the ALJ should clarify and further explain the weight given to Dr. Lambertson's opinion.

Second, Willingham indicated that the ALJ relied on her psychiatric nurse, who concluded that she was "stable." Willingham has argued that a stable finding did not support the

13

RFC because it indicated only that her condition had not changed. She has claimed that a stable finding did not demonstrate whether she could maintain employment. Willingham indicated correctly that a stable finding did not translate into an ability to work because she could have been disabled beforehand and simply remained disabled. *See **Murphy v. Colvin***, 759 F.3d 811, 819 (7th Cir. 2014). However, Willingham has failed to indicate that the ALJ also relied on the remainder of the nurse's opinion. (Tr. 28). The ALJ cited the nurse's remaining findings, which included no sleeping, appetite, or substance abuse problems, normal thought content and perception, medication compliance, coherent thoughts, and congruent affect, among other positive conclusions. (Tr. 27). The ALJ relied on the entire assessment to support her RFC finding. (Tr. 27).

Willingham has claimed that her GAF scores also did not support the ALJ's RFC assessment. She has indicated that the GAF scores were current GAFs, which only indicated a score at that particular time. Therefore, she has argued that her GAF score could have been lower at other times throughout the year when her symptoms were worse. Additionally, she has noted that she was not working when the GAF scores were calculated. Thus, her GAF score would likely be lower when she was working because her work would aggravate her symptoms. She relied on Dr. Lambertson's opinion that her anxiety would overwhelm her to support this argument. However, as discussed above, the ALJ rejected that portion of Dr. Lambertson's opinion.

Willingham also has claimed that the State agency psychologists' opinions did not support the RFC assessment. She noted that the psychologists found that she could perform unskilled work. However, Willingham has argued that the psychologists' opinions violated POMS by offering an opinion on whether she could perform a level of work. Therefore, she has

14

argued that the psychologists' opinions did not support the RFC because they failed to follow the rules.  Additionally, she has claimed that the psychologists cherry picked the record by only citing daily living activities that supported their opinions.  However, the ALJ also cited the consultants' determination that Willingham could understand, follow, and remember simple instructions, make judgments commensurate with unskilled work, handle changes in a routine work setting, and respond appropriately to interactions with coworkers and brief supervision. (Tr. 27).  Moreover, the consultants discounted the severity of Willingham's allegations.  (Tr. 436).  Despite Willingham's contentions, the ALJ could rely on the above evidence to support her RFC finding.  However, because the VE hypothetical requires remand, the ALJ should further support her RFC assessment on remand.

     Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

     ENTERED this 28th day of December, 2015.

                                    /s/ Andrew P. Rodovich  
                                    United States Magistrate Judge